This is a compensation suit in which the plaintiff, Thomas Carroll Sanders, seeks to recover judgment against his former employer, Swift Company, and its compensation insurance carrier, the Security Mutual Casualty Company, in solido, for weekly compensation at the rate of $12.48 for a period not to exceed 400 weeks, less the sum of $79.04 already paid him.
The employer, Swift Company, is engaged in the meat packing business, operating a plant about 4 miles east of the City of Lake Charles where plaintiff was employed and worked at the time of his alleged injury. He avers in his petition that he was working in the butcher department and while pushing the carcass of a beef along an overhead rail by means of overhanging rollers, he slipped and fell to the floor, catching himself on his left arm, breaking both bones just above the wrist joint, seriously and permanently impairing the usefulness of that arm, injuring the blood vessels, the nerves and tissues at that point, causing varicose veins and so injuring the arm until its usefulness has been permanently destroyed. He avers that by reason of his injury he is unable to do any work of a reasonable character and that is the basis on which he seeks to recover compensation as for total, permanent disability.
He sets out in his petition that while he was at high school he had suffered an injury to his left wrist which weakened the condition of the tissues and other parts involved in the joint, and which may have weakened its resistance and made it easier than under normal conditions for the injury which he sustained on the day of the accident complained of in this case to cause its impairment and the varicose veins from which he is suffering, the whole causing him more disability than he would otherwise have suffered.
For answer to the plaintiff's demand the defendants admit that he was employed by Swift Company on the date he claims to have been injured but they deny that he sustained any such injury as alleged by him. They admit that he suffered an injury to his wrist while participating in athletic sports when he was at high school and urge that if he sustained any injury whatever during his employment by Swift Company it was a slight sprain for which he has been paid compensation in full. They allege that any such injury as he might have sustained was treated at the expense of his employer and that by September 11, 1938, he had entirely recovered from the effect thereof and that if any disability exists at all it is due entirely to the injury received by him when he was in high school.
The case was tried in the district court on the issues as thus presented and the trial judge having reached the conclusion that plaintiff had failed to establish his demand to that degree of certainty which the law requires, rendered judgment in favor of the defendant, dismissing his suit and he has appealed.
Plaintiff sustained the alleged injury on which he predicates his demand on July 28, 1938. From the allegations in his petition it would appear that he had sustained a most serious injury; that not only were the two bones above the wrist joint broken but that he had also suffered other serious injuries to the nerves, tissues and blood vessels of the arm, to support which, he has submitted no proof whatsoever. *Page 194 
His testimony is to the effect that during the afternoon at about 3 o'clock, he was shoving the carcass of a beef on an overhead trolley and while doing so he slipped and fell on the cement floor, most of the weight of his body falling on his left arm and causing his wrist to be broken. He says that he heard a noise which sounded like something had snapped in his wrist and he felt a severe pain. He also states that he told "a fellow there on the platform" (evidently meaning a fellow-worker) that he had broken his arm. He did not remember this fellow-worker's name and naturally he was not called as a witness to testify and corroborate his testimony. He claims that he continued working some forty or fifty minutes until he had completed the work on hand and then went home. He relates how he suffered that night and how he helped himself to try to relieve his pain. The following morning he telephoned the office and was told to report to the nurse in charge of first aid. He went to see her and after having bandaged his wrist she sent him to Dr. T.H. Watkins, who attended to accident cases for Swift Company. Dr. Watkins placed his arm in a metal splint and sent him to Dr. G.C. McKinney to have an X-ray made. Dr. Watkins treated him for about two weeks and a half, after which he advised him to go back to light work. He went back, worked one day and one hour and was unable to continue.
Plaintiff then relates that in October, 1932, he sprained his arm while playing football at high school. He minimizes this accident by stating that after having had it attended to, more or less casually, he participated in a football game on the following Saturday. He enumerates in detail the different kinds of employment he engaged in and in which he performed hard manual labor after he left high school, all with the purpose of showing that there were no resulting disabilities from the injury he had sustained at that time.
Plaintiff's testimony and that of his father, with that of three witnesses called to corroborate his own testimony regarding his employment with different people after his first accident, comprises all the lay testimony offered by him. A.C. Bradford, his foreman at the time he worked for Swift Company, also testified, but his testimony is merely to the effect that plaintiff complained to him the day after the alleged injury and he had had no other report from him. The testimony in the case otherwise consists of that of several doctors, some of it of expert character, in which we find a unanimity of opinion with the exception of Dr. Robert Frazar, who attended the plaintiff at the time of his injury at high school.
Dr. Watkins states that he examined plaintiff on July 29, 1938, which would be the date after his alleged injury. He looked at plaintiff's wrist and except for a slight deviation of the ulna on the exterior it appeared to be normal. The movements were perfectly free although he complained of some pain. In reply to a question which he asked, plaintiff told him that he had sprained his wrist. He found no swelling, no cuts or bruises of any kind. He placed the wrist in a splint because the patient complained and in such cases, the usual treatment is rest, which apparently can best be obtained by having the injured member immobilized. He then sent him to be X-rayed, and states that the X-ray picture showed an old healed fracture of the radius and an old fracture of the styloid process of the ulna. It bore no evidence which would lead anyone to believe that there had been a new injury. He kept the plaintiff under observation, saw him nine times up to September 13, 1938, when he told him he ought to go back to work. He is definitely of the opinion that he has no disability to do hard manual work.
Dr. McKinney, who made the X-ray pictures, testifies that they show a fracture of long duration and that complete repair had taken place in the radius. A fragment still remained disunited in the ulna and never will become united because the surface has become glazed. He is of the opinion that the fracture shown could not have been less than two years old. On October 9, 1939, he made another X-ray of the plaintiff's wrist and saw no difference in the condition which existed at the time he made the other X-ray in July, 1938. He states that he cannot say what effect the fall plaintiff claims to have had on July 28, 1938 had, but he knows that it did not cause a fracture as he contends. It did not change the condition of the bone at all and there is no evidence of recent injury.
Dr. R.P. Howell, who is engaged in the general practice of medicine, examined the plaintiff's left wrist on October 9, *Page 195 
1939, and found a complete freedom of movements of the wrist and hand although it is somewhat smaller than the right hand. He examined the X-rays made by Dr. McKinney and found as he did, an old fracture. He recalls that at the time of his examination of plaintiff's wrist the latter told him that he had broken it some years before while playing football. He is of the opinion that if plaintiff suffers any disability now it is due to the so called pain he complains of and not to any mechanical factor. The pain, if any, is due to the injury caused by the distortion to his wrist as a result of the old injury.
Dr. S.F. Hatchette, testifying as an expert after having examined the X-ray film made by Dr. McKinney on July 29, 1938, states that it shows an old fracture of the styloid process of the ulna which resulted in this process forming a separate bone. He also saw an old fracture of the distal end of the radius with perfect healing. He was unable to see any evidence of recent injury and the fracture shown in the picture may have been of years' duration. He also examined the film made on October 9, 1939, and observed practically no change other than that film presents a lateral view and shows no fracture because of a shadow. He was also asked to examine a film made by Dr. Frazar but he did not find it of good diagnostic quality. There is however sufficient detail in it to show that it is a picture of the same wrist as shown in the other films and it also shows an old fracture.
As against the testimony of these four doctors we have that of Dr. Frazar, who states that the plaintiff has a deformity of his wrist and that he can't perform ordinary hard labor with it. He does not recall much about the injury plaintiff suffered at the time he was in high school and which he attended to. He does remember immobilizing the arm with a gauze bandage and also that he did not have the arm X-rayed at that time.
From all the testimony in the record, it is apparent then that the plaintiff has produced no proof beyond his mere statement that he suffered the fall in which he claims to have broken his wrist and so badly injured his arm on July 28, 1938. The only corroborating circumstances or proof of any kind is his own testimony relating to the pain he suffered, his report to the office the day following, the testimony of the attending nurse who bandaged his arm and sent him to Dr. Watkins and Dr. Watkins' testimony to the effect that he placed the arm in a splint and sent him to have an X-ray picture made. On the other hand the vast preponderance of the medical testimony shows most positively that he did not suffer a fracture of the bones near the wrist joint on that occasion, and it is definitely shown that he had an old fracture which undoubtedly must have been the one sustained by him a few years previous when he was injured while playing football at high school.
The contentions of the parties would place the matter concerning the respective injuries in positions that are exactly reverse, the one to the other. Plaintiff claims that the injury sustained at high school was nothing more than a minor sprain of his wrist without any fracture or any resulting effects whatsoever, whereas the accident which took place while working for Swift Company was the severe fracture which produced and causes his present disability. The defendants on the other hand contend that the serious injury which caused a fracture of the bones of the wrist took place at the time of the high school accident and that what he suffered while working for Swift 
Company was the minor injury which produced and caused no disability. We believe that the defendants' theory is supported by the preponderance of the testimony and that the only basis on which plaintiff might recover compensation would be if, from the weakened condition of his wrist joint as a result of his injury in high school, the injury of July 28, 1938, aggravated it to such an extent that he has become entirely disabled and unable to use his arm to do work of a reasonable character. That such situation is not the one that exists is amply borne out by the proof submitted by the plaintiff himself through the testimony of the various witnesses who stated that he had performed different kinds of hard work and labor after leaving high school. This testimony offers the best proof that the fracture which he had sustained at that time had completely healed and that there could have been no weakness in his wrist, otherwise he would not have been able to perform the many laborious tasks which they testify to. This proof is in addition to the abundance of medical testimony found in the record to the effect that he had an old fracture which had healed perfectly in all respects save with a slight *Page 196 
distortion or some mal-adjustment which may possibly cause him to suffer slight pain upon extreme motion or exertion of the wrist.
We agree with the learned district judge that although plaintiff may have sustained a sprain or bruise of his wrist in the fall of July 28, 1938, it was not of such a nature as to aggravate the old fracture found to exist in his wrist and which no doubt was the fracture suffered by him several years before. For the sprain suffered by him on July 28, 1938, he has been paid compensation by his employer in full and is not entitled to recover anything further in this proceeding.
The demand was properly rejected and plaintiff's suit was correctly dismissed in the judgment appealed from and the same is hereby affirmed.